May it please the court, Lawrence Rolfing on behalf of Katherine Bordbar who is present in the courtroom. After this long calendar, it's good to get to a simple case. These are never simple cases. This is simple. You have an interesting issue. Yes, this is simple in that the issue turns on the question of what does simple mean. What is is? Is that what we're doing here? Is simple simple or is simple something else? I guess that's the question. The confusion that lingers in the district courts, in a number of district court cases, is whether simple by itself allows for something more than what the DOT, the Dictionary of Occupational Titles, classifies as one and two step instructions. And former judge, then magistrate, Judge Larson, in the case of Meisel, said that simple implies more than just one and two step instructions. Simple is a broader term than that. And I tend to agree with former Judge Larson on that point. That is a finer distinction. And what Judge Larson said in Meisel was that we have a finely calibrated system of complexity that's reflected in the DOT. What Administrative Law Judge Benmore did in this case was she took the evidence and considered it, and she said the claimant is not limited to simple work. She said the claimant is limited to one and two step instructions. And one and two step instructions corresponds with the Dictionary of Occupational Titles. No, she uses both terms. The quote is one to two step simple instruction kinds of jobs. That's what she actually said in her hypothetical, right? That's correct. She uses both simple, but she also uses one and two step. And you're saying that may be a referral to level one of the DOT, right? Correct. And the Appendix C of the Dictionary of Occupational Titles in defining reasoning over one calls it simple one and two step instructions. So she has a definite parity. And what Judge Larson said in Meisel was we're not going to rely on mere serendipity of words and that words tend to appear. Because terms of art have special definitions. What don't have special definitions are the definitions of the terms of art. And what we have here is the definition of the term of art directly corresponding with the administrative law judge's finding that Ms. Boardbar is limited to one and two step instruction work activity. And the vocational expert did not identify work at the light level of exertion that the ALJ relied upon for the proposition that is defined by the DOT as one and two step instruction. I think I know the answer to this, Mr. Ruffin. But what do we do about the fact that all of the evaluators who looked at her mental and cognitive capacity essentially rated her higher than what the ALJ articulated in the hypothetical to the VE? As a matter of administrative law, we go back to the late 40s, SEC versus Chenery, and we run all the way up to Bray currently. The agency has to defend the agency's determination of what the agency found. And Judge Benmore in her decision exercised her discretion to construe the facts to say that the evaluators didn't tweak the reasoning level enough that she is limited to one and two step instructions. And we see that because Judge Benmore in her decision stated that the claimant had both moderate difficulties in social functioning and moderate difficulties in concentration, persistence, and pace. And Judge Benmore exercised her discretion and there's substantial evidence to support her determination that considering all of the evidence in the whole and considering the claimant's testimony that she would best be relegated to one and two step instructions. Is it that or if we are to review this record for substantial evidence, and I don't see any evidence in the record that suggests that she is as limited as you are urging us to find, why can't we uphold the ALJ's decision denying benefits because there is substantial evidence in the record that supports it? Or is this just one of those issues that only judges and lawyers can love? Well, it certainly is an issue that judges and lawyers can love because the underlying tension here is that the post hoc rationalization doctrine and the harmless error doctrine, when we have facts like this on our head on collision. And when the court, for instance, in Molina versus Astru, this court said, we're going to take articulations about one set of testimony and we're going to apply it to another set because we're staying within the four corners of the ALJ decision. When we step outside of the ALJ decision and start rewriting the ALJ decision and taking words out and putting other words in, that violates SEC versus Chenery and this court's adoption. If we remanded and the ALJ basically says, oh, I misspoke, I didn't mean to formulate the question that narrowly, where does that leave you? You're still going to lose, are you not? I mean, what's the purpose of a remand? If this court remanded to cure the step five question, and the step five question assumes that the step four question of residual functional capacity has been resolved, and the mandate of the case is assume the person is limited to light exertion, simple one and two step instructions, no productivity and pace requirements, is there work, given Judge Benmore's decision, is there work that exists in significant numbers that this claimant can do? Then we get an answer to the question that Judge Benmore asked. Because had the vocational expert in this case answered honestly that the work that I'm about to identify is not defined by the DOT as one and two step instructions, and I don't have a persuasive basis for deviating from the DOT, is the court convinced that Judge Benmore would not have then said that I can't rely on the identification of these three occupations? I'm also concerned because I read your client's functional report, where in the functional report we read about information about abilities. Yes. Check all of the items your illness or conditions affect. Following instructions is not checked. How well do you follow written instructions? Good. How well do you follow spoken instructions? Good. I read another functional report she wrote just a month later. Same answers. Yes. I read the same functional report filed by her father. Same answers. Okay. Again, I'm having trouble. It seems disingenuous based on what she said for you to come forward with this kind of appeal. I mean, I'm not trying to – you are a great lawyer. You come here before me many times, and I trust you. But this just seems – I can't understand it. How do I make that relate to this record? The claimant and her father both indicated that she had a good capacity to follow instructions, and that raises several issues. The first is, does the claimant have insight into her own condition? People with mental impairments and depressive disorders may or may not have insight into their own condition. And secondly, all of the examining and non-examining physicians, as Judge Tallman had indicated, rated the claimant as having moderate difficulties in detailed functioning, which would contradict what the claimant said about her own condition. And third, Judge Benmore considered all of that. She considered the functional reports. What we're trying to do, as I understand it, counsel, is we're trying to suggest as to what her question really meant. You're trying to argue it as one thing. It's the DOT, DOT, DOT. I can hear you. But with all of that, plus the, as my colleague, Judge Tallman, questioned you about is what's been said by other professionals, I'm having a tough time suggesting that what you want me to believe the question said is what it said. Well, I want the Court to be literal in its understanding of the question, because when an administrative law judge or counsel at a hearing asks a vocational expert a question, do we assume that the vocational expert has read the medical record, which they're not allowed to do, and is answering a question that was never asked? Because that's what Your Honor is assuming, is that the vocational expert is answering the question that a different medical professional asked, not what Judge Benmore asked. And it's what Judge Benmore asked that's critical. And she didn't just ask it, she put it into her affirmative findings that the claimant was limited to one and two-step instructions. How does Judge Benmore rate her ability to follow and understand and carry out one and two-step instructions? She rates that as good, which corresponds with the claimant's testimony in a written statement. And with Dr. Morgan's assessment at ER 235 and 236, where he checks the highest box, not significantly limited, in almost every category of understanding and memory and sustained concentration and persistence. I mean, this is a pretty good evaluation in terms of cognitive ability, is it not? And Judge Benmore exercised her discretion to reject that opinion. Reject it? I didn't see any language rejecting the evaluation of any of the evaluators. The question is, what did she mean? We're back to what simple means. Did she really mean to restrict it as narrowly as you want us to read it and then try and make it conform to the Dictionary of Occupational Title definition? If the court is concerned that the administrative law judge unintentionally drew a smaller circle around the residual functional capacity than the administrative law judge intended, and if that's the reluctance of the court to provide a remedy to Ms. Boardbar on this case, but the court is convinced that the vocational expert did not answer the question and that the ALJ framed in a proper manner under 004P in this court's decision in Massachi v. Astrup, then the proper remedy is to roll the case back to Step 4 and allow the administrative law judge to examine residual functional capacity anew. But that's not really my concern. My concern is that in reading this record as a whole, I think it substantially supports the ultimate conclusion that she's not disabled within the meaning of the Social Security Act, which is the bottom line of the ALJ's decision. And I'm concerned about remanding a case to the ALJ when I think there's a very strong likelihood that the result is going to be exactly the same. And when you come back to us the next time around on appeal, you're going to be in an even worse position than you are now because the record will be what the record is and there will be substantial evidence to support the finding of no disability. So why are we doing this? Because of the legal argument over what simple means? It is about the legal argument about what simple means, but I want to take what Judge Smith said before. You send this case back, it won't come back. It won't go back to the district court because I'll win. How? Reviewing the employment history, several of the jobs require reasoning levels above Step 1. There's no record of decline in mental reasoning in this record. But there is evidence. Only increased motor difficulty is alleged. But there is evidence of depressive disorders, and depressive disorders are notorious for causing a decreased capacity for cognition. Was there ever an argument made that your client couldn't perform jobs at reasoning level Step 2? Was there ever an argument made? I didn't see it. Administratively, is that your question? The answer is no. And the Supreme Court in Sims v. Apfel said that because of the inquisitorial nature of the Social Security Administration's process, non-adversarial process, that issue exhaustion isn't really required. And this Court's decision in Massachi v. Asrew says that we don't require the conflict with the DOT to be raised before the administration. It can be raised for the first time in the district court. That rule of Massachi is contrary to the rule in the Seventh Circuit and in the Fifth Circuit. But Massachi is the law of this circuit. Let me ask you this. The vocational expert said one occupation in response was a laundry sorter. Another was a thread cutter. And those are above Level 1 of the DOT. But he also said she could be a sticker. I said, what in the world is a sticker? Well, apparently that's an individual who applies stickers to bouquets of flowers. And that's a Level 1 DOT. So actually, if there are jobs, and he says there are 2,460 local positions and 26,203 national positions of stickers. Well, so Level 1, all she needs is one job that she could do and satisfy Level 5, right? But what the... Step 5. Step 5, of course. But the administrative law judge didn't do... I understand. I'm just trying to make sure. This is an AA course. What the administrative law judge didn't do was to rely on the sticker occupation in isolation. Didn't do that. Didn't identify at all as appropriate work at Step 5 at all. And didn't say that it was a significant number of jobs in light of her age, education, and work experience. And the ALJ could have used her discretion to say, at the time of decision, Ms. Boardbar is on the cusp of turning 50, and this single sedentary, unskilled occupation is a sticker that we have to look up to even figure out what it is, to stick labels on flowers, that that's not enough. The ALJ could have exercised her discretion to do that. And that's exactly the kind of discretion that administrative law judges exercise every day. And it's because of this severely restricted occupational base. That's why we're here. But if I'm right and you go back and the ALJ says, I didn't mean to be that restrictive with the question, then the answer is going to be, there are other jobs that she's perfectly capable of doing in the face of these evaluations, ample positions in the local economy. I don't understand your confidence that you're going to win on remand, but maybe I totally misunderstand how the system works. I think the court should be very reluctant to exercise that kind of attempt at prescience. The administrative, INS versus Ventura, cautions this court, don't make decisions for the agency. Let the agency make its own decision. They're the initial fact finder. This case should go back and let an ALJ make the initial fact finding and not have this court say, I have a very good idea of what the agency could do or might do or should do. That's not the function of this court. I hear your argument, and it's a fair point. I'll give you that. I'm way over time. Yeah, that's okay. Well, it's an interesting issue and well argued. Let's hear from the Commissioner of Social Security. Good morning. Shea Bond on behalf of the Commissioner of Social Security. Your Honors, there is substantial evidence in this record to support the ALJ Step 5 finding. I don't think anybody on this panel disagrees with that. The problem is, why did the administrative law judge say what she said? I cannot read the mind of the ALJ as to why she formulated the RFC for the one- to two-step work that she did. But the evidence fully supports that the claimant can perform over 300,000 unskilled jobs despite her limitation to one- to two-step instructions and her other functional limitations. And I actually, just to step back a moment, I disagree that the GED reasoning levels are relevant when it comes to talking about the actual residual functional capacity that is the government's primary argument is that when you're talking about reasoning levels, and it's what the dot actually says itself, is that that relates just to education of a general nature. It's essentially saying that it's just kind of the education that prepares you for entry into the workforce. It's not talking about actual specifics of the job duties that say that these preoccupations have. So is your position that simple is a term of art in the DOT, but that in the question that the ALJ formulated, simple means something different? Well, I'm saying that when the DOT is talking about, I mean, that was also said in MISLs, that there isn't this one-to-one parallel or correlation between words that might be or that are used in the DOT and words that the ALJ may use to describe a claimant's functional capacity due to specific job requirements. But going back to the reasoning level, we're talking about general education. This claimant graduated from high school, had some college, had taken some computer courses as recently, I think it's 2004. This is the type of education that allows for entry into the workforce. There's no suggestion that her education somehow diminished because of her depression. The depression doesn't erase your educational background. The ALJ did find, however, that the depression limits her work capacity, that it was limited down to the one- and two-step instructions. That limitation was posed to the vocational expert who then identified these three occupations, that they're all unskilled, they're all at the SVP-specific vocational preparation level of two, which the agency has stated in their regulations that that's equivalent to unskilled work. And then when you actually look at the requirements of these jobs, these occupations that were identified, and I would point out that plaintiff appellant has never argued that she cannot perform the actual demands of particular work duties of the occupations. That is never discussed. It's always just talking about these kind of generalized concepts. But it seems to me you need to answer Judge Tallman's question. All of these are good arguments, but we've got to focus on what was said, because if what was said and then what was relied on is not the same, then we can't get there. You can give any argument you want. What we've got to have is what are the facts that suggest that the ALJ did not intend the hypothetical one- or two-step simple instruction limitation to preclude this petitioner from performing jobs with a reasoning level greater than one? Because when you are formulating residual functional capacity, that's different than education. Education, the age of the claimant, and the past work history fall under the vocational factors. Those are three separate factors. They're separate from RFC. That is not taken into consideration when an ALJ is formulating RFC. The hypothetical question posed asked the vocational expert to consider the vocational factors, consider the claimant's age, education, and past work history. In addition to that, consider the RFC. It's a separate consideration. So the ALJ would not have envisioned the reasoning levels when she was formulating RFC. That wouldn't have come into the formulation and the analysis of RFC. She just goofed up then, basically, right? No, not at all. Our ALJ did not goof. She's talking about the functional capacity to perform work. Well, she goofed if she used the words one- to two-step simple instruction kinds of jobs. Well, no. She should have just said simple kinds of jobs, shouldn't she, and left out the one- and two-step business because that parallels DOT Level 1. But then again, I mean, that's assuming, which I don't think you can assume, that she was considering the reasoning levels when she was formulating RFC. What was she saying one- and two-step for? I'm sorry? Why would she have added the words one- and two-step instructions? I believe in the CE report the words one- to two-step were used, but in addition to the fact that the claimant could also perform the complex and detailed tasks as well. So that language actually appears in the record, but it's talking about the functional capacity. It's not talking about in terms of reasoning levels. How do we know that? Because the regulations separate out educational background from functional capacity. Explain again. Where does the one- and two-step occur other than in the DOT Level 1? Where does it appear? Oh, and I'm saying in this particular record we had Dr. Simonian, I think, had said that in issuing the opinion about what types of mental activities she could engage in, had used the words one- to two-steps. But that's where it appears in this record. But that same doctor also found that she could perform the detailed and complex levels of work activity. And that's also what the DDS physician had found, was that she could perform the more higher levels of mental functioning. And, again, if we're getting back to what substantial evidence shows in this record, and, I mean, it's true that the ALJ didn't ask the question under ruling 004-P, which was to ask, is there a conflict? But under Misaki, that error can be harmless. And one of the examples of it being a harmless error is if no conflict actually exists. Is there any obligation on the part of the claimant's attorney to lodge an objection at that point? And what's the effect if the objection is never made? It's not waived, is it? Well, as counsel had pointed out, under SIMS, there's no administrative waiver of an issue. But I think it would behoove counsel at a hearing before an ALJ to pose this question to a vocational expert. In this record, we had counsel did not ask any questions. He had no questions, I believe it was he, for the vocational expert after this testimony was provided. If this is such a huge conflict, why wasn't this brought to the attention of the ALJ? And I pose it that it's in the act. He asked three questions, none of which addressed this issue. Correct. So he didn't object to the VE's answer to the ALJ's question. Is there any consequence that flows from the failure to preserve this issue for appeal, or does he still get to raise it? I mean, I believe under SIMS he can still raise it. But then your position is that we evaluate it for harmless error. For harmless error. Because, you know, the question, we admit the question wasn't asked. But ultimately, and as my opposing counsel raised, you have the decision in Molina, which pretty much solidified what the harmless error standard should be, particularly as it applies to Social Security cases. And I believe I'm paraphrasing here, but the question is, would the ultimate disability determination be different? You know, would there be a different result? And there just wouldn't be. Mr. Rothney says I can't ask that question because INS versus Ventura says I have to send it back so the agency could tell me the answer that I know. Well, I'm going to disagree because that would actually render the whole harmless error jurisprudence irrelevant. And that's obviously not the case. And it's particularly not the case when it comes to Social Security appeals. I think in Molina that's very well laid out. And, again, the question is going to be, would there be a different result here? And there just simply wouldn't be. Not with the facts. Or that we should remand it back with directions to grant benefits. And we can't do that in immigration cases anymore under Ventura. Correct. Immigration cases. That's what I'm saying. Immigration cases. Yeah, we can't do that anymore. I mean, we used to send it back to the board with instructions that they should grant the claim for asylum. But I've heard Mr. Rolfing argue in other cases that we should simply reverse the ALJ's denial and send it back with directions to grant benefits. That would be absolutely inappropriate here, I believe. There's absolutely no proof on this record to send this back for payment. And there's no justification for sending it back even for further proceedings for a new hearing. I think the record in this case just fully supports that this claimant has a high level of mental functioning. There's just basically no treatment. As Your Honor was pointing out, her own statements to the agency were suggestive that she didn't believe that she really had any problems functioning mentally. Her main complaint, as I recall, is her right knee. Correct. That was the basis of the original application. It was just physical. And the evidence overwhelmingly shows a mental capacity for unskilled work, which were the only occupations that actually were identified. And, you know, again, the types of jobs that were identified, we have a laundry sorter, someone who just sorts the colors of laundry, a thread cutter, someone who's cutting dangling threads. This is not highly complex work. And I believe that counsel is trying to elevate these jobs as though they require some sort of mental functioning that is well beyond the unskilled nature that they actually are. I think counsel is really trying to argue that. It seems to me counsel is really saying this question, ask this. And there's no question that after you're going to ask that question, the answer could not have been what the ALJ then goes on to do. Isn't that what he's saying? Well, he's saying that, but I think you also then have to look at, I mean, I think the answer is not going to be different because you're looking at the jobs that were actually identified by the vocational expert. These are all unskilled jobs requiring very little mental functional capacity based on them being unskilled. And there's really no basis other than claimant's mere disagreement with the vocational expert's identification of these jobs that they do not fall within her functional capacity and that they don't, that there is a conflict. I'm going to admit not great knowledge in this area. I've got two experts in front of me. I give my best effort to come to the right result in these particular areas. But in reviewing cases like this, we look at steps and we look at questions and we look at what the questions generally are. And when we see those questions, we then can review based on what the wording of the question is. And we don't, we don't, I frankly don't want the necessity of going to have to search all over in the record to try to find out what a question really means. It seems to me that in this particular area, which is left to you experts who are sitting out there to tell me, that when I'm reviewing this and I see a question, it seems obvious what the question is based on the area from which it comes. And then me come on and now say, that's okay. I'm going to look at everything else that the government or anybody else wants to say about what that question means. And I'm going to interpret it differently than the wording says. Give me some comfort that I'm not going to have to do that if I follow what you're asking me to do. Well, the question that the... Because, I mean, anybody who's sitting in this room who doesn't know anything about this won't know half of what you said or he said because you're all talking in initials and all kinds of stuff. And we're trying to come up with what we're supposed to do in these areas. And now you're saying questions don't mean what they say. You've got to look at everything else in order to say what the question means. Well, I think in this case there are two things. I think that you can just look at the question asked, but then with a substantial evidence standard, you do look at the record as a whole. But the question posed here to the vocational expert was for the one- to two-step work capacity. That's the question that was posed. The vocational expert identified the three occupations, all with an SVP of two. Sorry to use the acronym again. Specific vocational preparation that's related to the Dictionary of Occupational Titles. That is considered to be unskilled work. The agency has determined that to be unskilled work. So there's nothing inconsistent. There's no conflict between the capacity to perform the one- to two-step jobs with unskilled work. Now you're getting to the question of the reasoning levels. But the reasoning levels don't relate to the functional capacity. It just talks about education in a general manner. It's just education is of a general nature which does not have a recognized fairly specific occupational objective. And that's what the Dictionary of Occupational Titles describes the education factors. So it's actually admitting that there's no specific occupational objective when you're looking at these different levels of reasoning, mathematics, and language that formulate the GED requirement. So given that, I don't see how you'd get the correlation between what the functional capacity is and what the educational level is when the DOT itself is saying that there is no correlation, essentially. Okay. I think we've got it. Thank you very much. Thank you very much. And we would ask that you affirm, please. We get that part. Mr. Rolfing, I'll give you a minute on remodel. Thank you. General educational development is defined as the reasoning development necessary for average satisfactory job performance. That's what reasoning is defined in the revised Handbook of Analyzing Jobs. Let's leave INS versus Ventura and SEC versus Chenery and Molina versus Astru. We'll leave that for another day. I want to respond to your question, Judge Tolman. If the vocational expert's answer doesn't properly and legally answer the questions before us, I don't think the court should rewrite the ALJ's decision, assuming that the rest of what the vocational expert answered was reliable. So does her lawyer have no obligation to interpose an objection? I think what I'm hearing you say is that the answer given was improper because it was not relevant to the question as formulated and the V.E. should not have given the answer that she gave because her answer didn't correspond under the regulations to the question that was posed to her. In essence, the expert rendered an opinion based on an improper question. There was insufficient foundation laid for her answer. There was insufficient foundation for her answer. And the attorneys that represent these people that go before the Social Security Administration, should this have been brought up? Yes. Yeah. Should have been waving the red flag. Wait, Judge. But it's because of the structure of the Office of Disability Adjudication Review that doesn't use the Anglo-American jurisprudential model. It uses the European continental inquisitorial model. And it's only because of the inquisitorial model that we can excuse the failure of an attorney to bring this to the ALJ's attention. Okay. All right. Thank you both very much. That was a helpful argument. The case just argued is submitted. We will puzzle our way through it and give you an answer as soon as we can. We will be adjourned until 9 a.m. tomorrow morning. And we'll talk to you later about the post. All right. All rise.
judges: Gilman, Tallman, Smith